1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11

AHMED ZOHIR SAADELDIN
SAADHOM,

               Petitioner,

v.

PAMELA BONDI, et al.,

               Respondents.

CASE NO. 2:26-cv-00425-TL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

       This matter is before the Court on Petitioner Ahmed Saadhom's Petition for Writ of

Habeas Corpus. Dkt. No. 6. Respondents are Pamela Bondi, United States Attorney General;

Kristi Noem, Secretary, United States Department of Homeland Security ("DHS"); Laura

Hermosillo, Acting Seattle Field Office Director, Enforcement and Removal Operations

("ERO"), United States Immigration and Customs Enforcement ("ICE"); Bruce Scott, Warden,

Northwest ICE Processing Center ("NWIPC"); and ICE. Petitioner, who is presently detained at

the Northwest Immigration and Custom Enforcement Processing Center (*id.* at 2), seeks: (1) his

release from custody; (2) an order that prevents his re-detention without a hearing before a

neutral decision maker, where the Government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released; (3) an order that Respondents may not re-detain Petitioner unless Respondents comply with Petitioner's proposed conditions; (4) an order that prevents Petitioner's removal to a third country without notice and a meaningful opportunity to respond; and (5) an order that prevents Petitioner's removal to a third country on the basis that such removal represents unconstitutional punishment (*id*. at 26–27). Having reviewed the Petition, Respondents' Return[1] (Dkt. No. 10), Petitioner's Reply (Dkt. No. 13), and Petitioner's supplemental authority (Dkt. No. 14) the Court GRANTS IN PART and DENIES IN PART the Petition.

## I.    BACKGROUND

Petitioner is a 22-year-old citizen of Egypt. Dkt. No. 6 at 5. Petitioner came to the United States to escape political persecution and torture in his home country. *Id*. 6–7. After Petitioner's father was involved in a dispute with a member of Egyptian parliament over corrupt practices in Petitioner's village, Petitioner's father was arrested, detained, tortured, and deprived of medical care; he ultimately died. *Id*. at 6. Subsequently, Petitioner became active in the political campaign of an opposition candidate. *Id.* He continued his political activism at his university, where he was a law student. *Id*. However, this resulted in Petitioner's being arrested, detained, and tortured as a political prisoner. *Id*. As such, Petitioner felt he had no choice but to leave Egypt and seek what he hoped would be a better life in the United States. *Id*.

On or about September 4, 2024, Petitioner entered the United States without being admitted or inspected. Dkt. No. 11 (Douglas Decl.) ¶¶ 3, 4. Petitioner encountered immigration officials near San Ysidro, California and was arrested. *Id*. ¶ 4. On November 1, 2024, Petitioner

---

[1] As used in this order, the term "Respondents" includes all Respondents except Respondent Scott. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

asserted his fear of returning to Egypt and was referred for a credible fear interview with U.S.

Citizenship and Immigration Services ("USCIS"). *Id*. ¶ 5. On December 23, 2024, a DHS asylum

officer found that Petitioner had expressed a credible fear of return to Egypt. Dkt. No. 12-2

(Notice to Appear ("NTA")) at 2. Additionally, DHS issued Petitioner an NTA, charging

Petitioner as inadmissible under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I), 8 U.S.C.

§§ 1182(a)(6)(A)(i), (7)(A)(i)(A), of the Immigration and Nationality Act ("INA") and,

therefore, subject to removal from the United States. *Id*. On March 3, 2025, Petitioner submitted

an application for relief to the immigration court. Dkt. No. 11 ¶ 7. Petitioner appeared for his

final merits hearing on June 4, 2025, where an Immigration Judge ("IJ") ordered Petitioner

removed, but granted withholding from removal to Egypt. Dkt. No. 12-4 (Order of the

Immigration Judge) at 2. Petitioner waived his appeal of the IJ's decision. *Id*. at 3. Therefore,

Petitioner's removal order became final on June 4, 2025. *See* Dkt. No. 12-4 at 5; 8

C.F.R. § 1241.1(b). At the time the habeas petition was filed on February 6, 2026, Petitioner had

been in detention for approximately 17 months (*see* Dkt. No. 11 ¶ 4), including eight months

after his removal order became final (*see* Dkt. No. 12-4).[2]

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their

respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance

of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the

United States," 8 U.S.C. § 2241(c).

---

[2] Where necessary for analysis under *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001), the Court will calculate the length of Petitioner's detention up to February 5, 2026, the date the petition was formally filed. Otherwise, the Court will refer to his time in detention as of the date of this Order.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution,

no person shall be "deprived of life, liberty, or property, without due process of law . . . ." U.S.

Const. amend. V. The Fifth Amendment guarantee of due process applies to removal

proceedings. *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). In addition, the

Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final

order of deportation . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v.

United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003)

(recognizing that Fifth Amendment due process protections extend to removal proceedings, but

noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the

deportation process").

### III.    DISCUSSION

Petitioner seeks a writ of habeas corpus on three grounds: (1) Petitioner's continued

detention in immigration custody violates the due process clause of the Fifth Amendment (Dkt.

No. 6 at 21); (2) Respondents' third-country removal policy violates the Fifth Amendment, the

INA, the Convention Against Torture, the Administrative Procedure Act ("APA"), and

regulatory requirements (*id*. at 22); and (3) Respondents' third-country removal policy violates

the Fifth and Eighth Amendments (*id*. at 23). He also seeks injunctive relief on procedural due

process grounds. *Id*. at 21. The Court will address these in turn.

**A.    Continued Detention**

**1.    Legal Framework for Detention Under the INA**

As a noncitizen with a final order of removal, Petitioner is detained under 8 U.S.C.

§ 1231. Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney

General shall remove the [noncitizen] from the United States within a period of 90 days (in this

section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2)

mandates the detention of the noncitizen during the removal period. *Id.* § 1231(a)(2)(A). Finally, Section 1231(a)(6) authorizes the continued detention of noncitizens after the expiration of the removal period:

> [A noncitizen] ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by [the Secretary of Homeland Security][3] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6).

Although there is no temporal limit on the length of detention in the statute, the Supreme Court observed in *Zadvydas* that "Congress enacted the present law, which liberalizes preexisting law by shortening the removal period from six months to 90 days, mandat[ing] detention of certain criminal [noncitizens] during the removal proceedings and for the subsequent 90-day removal period . . . ." *Zadvydas*, 533 U.S. at 698. The Supreme Court reasoned:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months."

*Id.* at 701 (citing Juris. Statement in *United States v. Witkovich,* O.T. 1956, No. 295, at 8–9.)

The *Zadvydas* Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), *id.* at 699, instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682.

---

[3] Although 8 U.S.C. § 1231 refers to "the Attorney General" as having responsibility for detention and removal of noncitizens, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 441(2), 116 Stat. 2135, 2192 (2002), transferred this authority to the Secretary of the Department of Homeland Security. *See also* 6 U.S.C. § 251.

"[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized six months as that time limitation. *Id.* at 701. It found that if a statute were to permit indefinite detention of a noncitizen, that would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.*

Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* at 701. However, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

### 2. Petitioner's Circumstances

#### a. Presumptively Reasonable Period of Detention

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Nevertheless, "for detention to remain reasonable, as the prior period of postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

In the present case, Petitioner's removal order became final on June 4, 2025, meaning he has been detained over nine months since his removal order became final. Respondents do not contest the length of Petitioner's detention, or that it exceeds the presumptively reasonable six-

month period. Therefore, the Court finds that Petitioner has been detained past the presumptively reasonable period.

### b. Significant Likelihood of Removal in the Reasonably Foreseeable Future

Petitioner also satisfies his burden under *Zadvydas* to show that no significant likelihood of removal in the reasonably foreseeable future exists here. Petitioner asserts, and Respondents agree, that the IJ granted withholding of removal to Egypt. Dkt. No. 6 at 4; Dkt. No. 10 at 16. Further, he does not have citizenship or proven ties to another country, and there is no evidence that any other country is willing to accept Petitioner's third country removal under 8 U.S.C. § 1231(b)(2)(E). As the Ninth Circuit has recognized, a grant of withholding of removal under the Convention Against Torture to a noncitizen "is a powerful indication of the improbability of his foreseeable removal, by any objective measure." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006); *see also Nguyen v. Field Office Director*, No. C26-394, 2026 WL 538487, at *3 (W.D. Wash. Feb. 26, 2026) (finding petitioner satisfied his burden of demonstrating that removal was not reasonably foreseeable because he had been in detention seven months, had been granted withholding of removal prohibiting removal to his home country, and there had been no indication from third-country consulates that they would accept petitioner); *Shadalo v. Mattos*, No. C25-2076, 2025 WL 3568234, at *6 (D. Nev. Dec. 14, 2025) (finding petitioner satisfied his burden that removal was not reasonably foreseeable, in part, because petitioner could not be removed to his birth country pursuant to the CAT); *Vishal v. Chestnut*, No. C25-1469, 2025 WL 3511815, at *3 (E.D. Cal. Dec. 8, 2025) (finding petitioner satisfied his burden that removal was not reasonably foreseeable where petitioner was granted withholding of removal and ICE had not identified a third country willing to accept petitioner, despite petitioner's having been detained for seven months); *Gomez v. Mattos*, No. C25-975, 2025 WL

3101994, at *5 (D. Nev. Nov. 6, 2025) (finding petitioner satisfied his burden that removal was not reasonably foreseeable where petitioner put forth evidence that he was granted withholding of removal from his home country and that DHS has not identified a third country to which it could remove him).

       **c.**     **Respondents' Rebuttal**

Respondents hold the burden of rebutting Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents must "respond with evidence sufficient to rebut that showing." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 723 (W.D. Wash. 2025) (quoting *Zadvydas*, 533 U.S. at 701). The Court is unconvinced by Respondents' rebuttal here.

To start, Respondents misrepresent Petitioner as a "criminal noncitizen[]" (Dkt. No. 10 at 14) despite not citing to any evidence that Petitioner has committed, let alone been charged with a crime in the United States (*see generally* Dkt. No. 10). Next, Respondents claim that ICE's "multifaceted efforts combined with Petitioner's refusal to cooperate" rebut any claims made by Petitioner. *Id*. at 15. Respondents further claim that "Petitioner's recalcitrant refusal to cooperate in effectuating his removal' is the reason why he remains in detention." *Id*. But Respondents fail to provide sufficient facts to support this finger-pointing.

Respondents assert that they "have reason to believe Petitioner has a sister in Canada," but that Petitioner claims he does not have family ties outside of the United States. Dkt. No. 10 at 7. In other words, Respondents claim that Petitioner is lying about not having a sister in Canada. However, although Respondents claim Petitioner's insistence that he does not have family in Canada has interfered with his potential removal to that country, Respondents themselves offer no proof that such a sister exists. Instead, Respondents assert that they have "reason to believe" Petitioner has a sister in Canada while offering no details about those "reasons." Dkt. No. 10 at

12; Dkt. No. 11 ¶ 11. Petitioner makes clear in his reply that he denies having a sister in Canada. Dkt. No. 13 at 5. It defies common sense that if Petitioner has a sister in Canada, he would lie and take his chances on being removed to an unknown third country where he would have no family ties.

Respondents assert that Petitioner remains in detention because he does not want to be removed from the United States or to a third country, and that his non-cooperation has impacted Respondents' ability to obtain travel documents. *See* Dkt. No. 10 at 15. Respondents make clear that it is their expectation that Petitioner should be contacting consulates of countries to which he is willing to be removed, and that they have given him a "Warning for Failure to Depart" for not providing evidence that had contacted foreign consulates. Dkt. No. 11 ¶¶ 13–14; *see also* Dkt. No. 10 at 7.

The Court is perplexed and confounded by Respondents' insistence that the burden of facilitating removal should be shifted to someone who they themselves hold in a prison-like detention setting. *See e.g. Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025) (finding that petitioner demonstrated that conditions at the NWIPC are akin that of a prison by asserting that "he is confined in a restrictive setting, where he is permitted to go outside only twice a week, for forty minutes each time," as well problems with food, medical neglect, and cleanliness); *see also Diaz Reyes v. Wolf*, No. C20-377, 2020 WL 6820903, at *7 (W.D. Wash. Aug. 7, 2020) (finding that the NWIPC conditions are similar to jails and prisons). Respondents assert Petitioner's burden without providing any explanation as to how Petitioner might be expected to make such calls or contacts with foreign consulates while detained, or to successfully convince a country to which he has no ties to accept him. The Court agrees with the recent observation of another court in this District: "This is not obstruction, it is

1  blaming an asylum seeker for not having ties to third, fourth, or fifth countries." *Yukseloglu v.*

2  *Bondi*, No. 26-467, 2026 WL 617367, at *3 (March 5, 2026).

3        The Court also finds unfounded Respondents' assertion that Petitioner's actions represent

4  a "refusal to cooperate," similar to that of the detainee in *Pelich v. INS*, 329 F.3d 1057 (9th Cir.

5  2003). *See* Dkt. No. 10 at 15. In *Pelich*, the Ninth Circuit affirmed the district court's ruling that

6  Mr. Pelich's immigration detention was not indefinite in violation of due process because he

7  refused to cooperate with Immigration and Naturalization Service's ("INS") attempts to remove

8  him. *Pelich*, 329 F.3d at 1057–58. However, the Court's holding was due to findings that Mr.

9  Pelich initially refused to complete a Polish passport application (*id*. at 1058); that he then filled

10  out the application but lied about his name, his nationality, and where he was born (*id*.); and that

11  he provided the INS with conflicting information regarding his parents' names and his parents'

12  birthplaces and residences (*id*. at 1059). At most, Respondents might claim Petitioner is not

13  being forthright about having a sister in Canada, but for the reasons already discussed, the Court

14  rejects this assertion. The Court finds the *Pelich* facts to be nothing like the facts in the instant

15  case. *See e.g. Kara v. Bondi*, No. C26-105, 2026 WL 322772, at *4 (W.D. Wash. Feb. 6, 2026)

16  ("Here, Respondents do not point to sufficient evidence that Petitioner was noncooperative. The

17  government's sworn declaration says that Petitioner 'refused to provide any third countries he

18  would be willing to go to,' which does not amount to an affirmative misrepresentation or refusal

19  to apply for travel documents as in *Pelich*[.]" (citation modified)).

20        Finally, Respondents' arguments that their efforts at removal rebut Petitioner's arguments

21  are also unfounded. Respondents assert that they have submitted travel document requests to

22  Canada, Panama, and Costa Rica, but they are silent as to whether they have heard back from

23  those countries. Dkt. No. 10 at 15–16. Further, they say that they "intend[] to pursue third

24  country removal and [are] working with ERO HQ on this case[,]" *id*. at 16, but they did not send

any such requests to any third countries until December 17, 2025. Dkt. No. 11 ¶ 12. Lastly, Respondents admit there is no specific date of anticipated removal (*id*.), despite his final removal order having been entered over nine months ago. These efforts do not make removal reasonably foreseeable. *See e.g. Tran v. Noem*, No. C25-1523, 2025 WL 3268491, at *3 (E.D. Cal. Nov. 24, 2025) (assertion that the government was "actively working on obtaining a travel document for Petitioner to Vietnam" was insufficient to show removal was reasonably foreseeable); *Phan v. Beccerra*, No. C25-1757, 2025 WL 1993735, at *5 (E.D. Cal. July 16, 2025) ("Respondents' intent to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Hambarsonpour v. Bondi*, No. C25-1802, 2025 WL 3251155, at *2–3 (W.D. Wash. Nov. 21, 2025).

Accordingly, pursuant to *Zadvydas*, Petitioner has demonstrated that his continued detention is unlawful. A writ of habeas corpus is thus warranted with respect to Petitioner's ongoing detention.

**B.    Third Country Removal**

Petitioner also makes requests of the Court related to his beliefs regarding the process of removal to a third country. First, Petitioner requests that the Court "Order that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the [INA] and due process in reopened removal proceedings." Dkt. No. 6 at 27. Next, Petitioner requests that the Court "Order that Respondents may not remove Petitioner to any third country because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm." *Id*. In response, Respondents argue that Petitioner's claim regarding fear of removal to a third country is already protected under existing DHS policy. Dkt. No. 10 at 16–17.

1          1.       **Third-Country Removal Process**

2                   a.       **Existing DHS Policy**

3          Removal to a third country is permissible *only* if it is "impracticable, inadvisable, or

4   impossible" to remove a noncitizen to: (a) the country the noncitizen has designated for removal;

5   (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from

6   which the individual was admitted to the United States, or which contains the port from which

7   they disembarked for the United States or a contiguous territory; or (d) the noncitizen's country

8   of birth (or the country that now contains their birthplace) or immediate previous residence. 8

9   U.S.C. § 1231(b)(2)(E). Under such circumstances, the government may remove the noncitizen

10  to "another country whose government will accept [them] into that country." *Id.* §

11  1231(b)(2)(E)(vii). Even then, the government may not remove any person to a country where

12  they will be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16, 1208.16.

13  Where third-country removal is anticipated, due process requires, *inter alia*, notice of the country

14  to which the noncitizen will be removed that is not be provided "last minute," but instead with

15  sufficient time for the noncitizen to have a meaningful opportunity to apply for fear-based

16  protection from removal. *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999). Courts in this

17  District have found, and this Court agrees, that such notice must consist of "written notice of the

18  country being designated" and "the statutory basis for the designation, i.e., the applicable

19  subsection of § 1231(b)(2)," and that the noncitizen must be affirmatively asked whether they

20  fear persecution or harm upon removal to the third country, with their response memorialized in

21  writing. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019).

22          If a noncitizen claims fear of removal to a designated third country, courts in this District

23  have repeatedly held that ICE must give the petitioner an opportunity "to pursue [a] claim for

24  withholding of deportation in reopened removal proceedings before an immigration judge."

1    *Abubaka v. Bondi*, No. C25-1889, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025); *see*

2    *Arenado-Borges v. Bondi*, No. C25-2193, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025)

3    (collecting cases). These district court cases are not binding, but Respondents offer no reason the

4    Court should not follow them. The Court finds the reasoning in *Aden* and the other cited cases

5    persuasive and concludes that constitutionally and statutorily compliant notice requires that,

6    before Petitioner may be removed to a third country, he must be given an opportunity to respond,

7    and—if he has a fear of persecution or torture—reopened removal proceedings before an

8    Immigration Judge.

9         Respondents assert that "Petitioner's claim of fear of removal to a third country is already

10    protected under existing DHS policy."[4] Dkt. No. 10 at 16. While much ink has been spilled

11    discussing how the current DHS policy works, and why, those procedures have repeatedly been

12    held to fall far short of what courts in this District and this Circuit have held is required by due

13    process. *See, e.g.*, *Rea-Hernandez v. Bondi*, No. C25-2609, 2026 WL 322874, at *9 (W.D.

14    Wash. Feb. 6, 2026) ("Alarmingly, this policy provides that "[i]f the United States has received

15    diplomatic assurances from the country of removal that [noncitizens] removed from the United

16    States will not be persecuted or tortured, and if the Department of State believes those assurances

17    to be credible, the [noncitizen] may be removed *without the need for further procedures*.");

18    *Francisco Lorenzo v. Bondi*, No. C25-2660, 2026 WL 237501, at *9–10 (W.D. Wash. Jan. 29,

19    2026) (finding that Respondents' third-country removal policy, as described in the July 9, 2025,

20    memorandum, "simply do[es] not comport with due process"); *Escobar v. Chestnut*, No. C25-

21    1801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found

22

23    _____

24    [4] The DHS Policy refers to a March 30, 2025, DHS memo titled "Guidance Regarding Third Country Removals,"
     and a June 23, 2025 ICE memo titled "Third Country Removals Following the Supreme Court's Order in
     Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025)." Dkt. No. 10 at 9–10.

1   that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional and

2   contrary to Ninth Circuit precedent." (collecting cases)). The Court will not spend more time

3   repeating those reasons here, except to reiterate that the widely circulated DHS policy does not

4   inspire confidence that Respondents can be relied upon to afford Petitioner with a statutorily and

5   constitutionally sufficient process absent an order from this Court.

6   **b.    Request for Injunctive Relief**

7       A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has

8   suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

9   inadequate to compensate for that injury; (3) that, considering the balance of hardships between

10  the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

11  would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S.

12  388, 391 (2006). Petitioner meets this standard.

13      Petitioner has shown that he suffered irreparable injuries for which monetary damages are

14  likely unavailable or inadequate to compensate him: his unlawful detention and violation of his

15  due process rights. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well

16  established that the deprivation of constitutional rights 'unquestionably constitutes irreparable

17  injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Petitioner is likely to suffer that

18  injury again if Respondents attempt to remove him to a third country without the protections

19  required by the Due Process clause, and he is likely to suffer even graver injury if a

20  constitutionally deficient removal is effectuated. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)

21  (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an

22  imminent threat of severe, irreparable harm"). Were Petitioner to be "removed from the United

23  States to the custody of a foreign sovereign . . . the Government [might] argue[], as it has

24  previously argued, that no U.S. court ha[s] jurisdiction to order relief." *Id.* at 93. That is, the legal

remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely. In light of such serious harm to Petitioner, the balance of equities tips steeply in his favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Respondents of providing notice and an opportunity to be heard if they wish to remove him. Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citation modified). Under these circumstances, injunctive relief is appropriate.

Because Petitioner has demonstrated that injunctive relief is warranted, the Court will grant Petitioner's request to "[o]rder that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. No. 6 at 27.

### 2. Punitive Third-Country Banishment

In addition to the procedural concerns discussed above, Petitioner further alleges that his potential third-country removal pursuant to Respondents' current policy would violate the Eighth Amendment's prohibition of cruel and unusual punishment, the Fifth Amendment's prohibition of extrajudicial punishment, and the long-established rule, dating to *Wong Wing* in 1896, 163 U.S. at 228, that no "infamous punishment" in addition to deportation may be imposed for immigration violations without a proper criminal trial. Dkt. No. 6 at 24.

In support of this argument, Petitioner asserts that it has been reported that Respondents have "attempted—and completed—an 'end-run' around the protections of the Convention Against Torture by deporting a group of migrants to Ghana, which sent them on to their countries of citizenship despite fears of persecution." Dkt. No. 6 at 17 (citing Sarah Stillman, *Disappeared to a Foreign Prison*, The New Yorker (Dec. 12, 2025)). Petitioner alleges that the

Trump administration has hand-picked countries known for human rights abuses and instability for its deportations, in an attempt to spread fear and deter immigration, and that hundreds of noncitizens have been removed to third countries only to be met with mistreatment and summary, sometimes indefinite, detention. *Id.* at 18–19. The Court notes that Petitioner does not substantiate these allegations. But it also notes that Respondents do not deny them, and that "courts in this district and across the country have recognized that Petitioner is correct: the government is intentionally removing individuals to countries where they will be imprisoned." *Nguyen v. Bondi*, No. C25-2024, 2025 WL 3534168, at *9 (citing *Nguyen v. Scott*, 796 F. Supp. 3d at 734 (collecting cases)).

However, in this particular case, faced with the particular pleadings before it, the Court does not have sufficient basis to find that Respondents' third-country removal program is unconstitutional as a whole, or that third-country removal would be punitive as applied to Petitioner specifically. For example, one of the declarations Petitioner provides is from *Nguyen v. Scott*, 796 F. Supp. 3d 703 (W.D. Wash. 2025), in which an immigration attorney from North Carolina discussed the deportation of Vietnamese detainees, based on his experience representing Vietnamese citizens in immigration court. Dkt. No. 1-7 (Nguyen Decl.). This example was unique to that particular petitioner, because he was considered a "pre-1995" Vietnamese immigrant and, due to the Vietnamese government's history of not issuing travel documents to such individuals, it resulted in an uptick in similarly situated petitioners being deported to South Sudan and Eswatini. *See Nguyen v. Scott*, 796 F. Supp. 3d at 716–17. Whereas Petitioner here is from Egypt, and he provides no such declaration or other facts regarding a third-country removal practice specific to him or to others like him. Cases in this District in which courts *have* found as much, "which were specific to a particular population and particular

destination countries, do not extend to these circumstances." *Arenado-Borges*, 2025 WL 3687518, at *7 (citing *Nguyen*, 796 F. Supp. 3d at 734; *Abubaka*, 2025 WL 3204369, at *8.)

On this record, the Court cannot find that Petitioner's removal to a third country would constitute unconstitutional punishment. The request is DENIED without prejudice.

## C.    Re-Detention

Petitioner seeks a permanent injunction preventing Respondents from re-detaining him "without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released." Dkt. No. 6 at 26. He also requests the Court order Respondents to meet a specific sub-set of conditions prior to any re-detention, namely, that Respondents: (1) obtain a valid travel document for Petitioner; (2) provide the valid travel document to Petitioner and his counsel; (3) offer Petitioner the opportunity to leave on his own within two months; and (4) if Petitioner does not leave within two months, Respondents are permitted to re-detain Petitioner provided they have already made concrete arrangements for him to be put on a flight to a third country in the reasonably foreseeable future. *Id.* In response, Respondents argue that any request regarding re-detention is speculative and does not provide a basis for habeas relief. Dkt. No. 10 at 18.

### 1.    Federal Regulations

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen who has been ordered removed. *See* 8 C.F.R. § 241.13. Section 241.13(i)(2) provides that "The Service may revoke [a noncitizen]'s release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably

foreseeable future." Further, Section 214.13(i)(3) provides:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification. The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

The regulation was "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (quoting *Santamaria Orellana v. Baker*, No. C25-1788, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)). Petitioner cites to the regulation (Dkt. No. 6 at 12–13), and Respondents do not dispute that the regulation governs their conduct in re-detaining Petitioner (*see generally* Dkt. No. 10).

### 2. Request for Injunctive Relief

Petitioner meets the requirements for a permanent injunction.

First, the Ninth Circuit has held that a permanent injunction is appropriate where the party can demonstrate it is likely to suffer irreparable injury. *See City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018) ("An injunction is appropriate when the party seeking relief demonstrates that . . . it is likely to suffer irreparable injury that cannot be redressed by an award of damages"). Petitioner chronicles the various other cases in which courts in this District have ordered the release of similarly situated petitioners because they were re-detained in violation of due process. *See* Dkt. No. 6 at 10–11. This District, as well as others,

have released petitioners subject to a final order of removal because Respondents did not follow

the federal regulations before re-detaining a petitioner—specifically, they failed to provide

adequate notice of the revocation and an opportunity to be heard. *See, e.g.*, *Le v. Bondi*, No. C25-

2454, 2026 WL 309239, at *6 (W.D. Wash. Feb. 5, 2026) (finding that Government did not

comply with 8 C.F.R. § 241.13 when they revoked Order of Supervision and re-detained

petitioner subject to final removal order and ordering that Government shall not re-detain

petitioner without compliance with 8 C.F.R. § 241.13 and 8 U.S.C. § 1231); *see also id.* at *6 n.2

(collecting cases where Respondents failed to show proof of following federal regulations when

re-detaining petitioner subject to final removal order); *see also Huy Van Tran v. Bondi*, No. C25-

2335, 2025 WL 3725677, at *5 (W.D. Wash. Dec. 24, 2025); *Khim v. Bondi*, No. C25-2383,

2025 WL 3653724, at *4 (W.D. Wash. Dec. 17, 2025); *Jimenez v. Bondi*, No. C25-2167, 2025

WL 3466925, at *2, 3 (W.D. Wash. Dec. 3, 2025). These cases convince the Court that, absent a

court order, this type of deprivation can and may likely happen to Petitioner. Second, "[i]t is well

established that the deprivation of constitutional rights 'unquestionably constitutes irreparable

injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres*, 695 F.3d

at 1002). A violation of due process means Petitioner meets the second *eBay* prong as well. *See*

*id.* at 999 (observing that "unlawful detention certainly constitutes 'extreme or very serious'

damage, and that damage is not compensable in damages.").

Finally, prongs three and four of the *eBay* factors merge when the Government is the

party opposing the issuance of injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Petitioner is correct that Respondents suffer no hardship by being prevented from following

unlawful re-detention practices. See Dkt. No. 6 at 22. Respondents do not contest that they are

required to follow the federal regulations when re-detaining noncitizens. Further, Petitioner has

documented how Respondents already have repeatedly violated the rights of other petitioners

1    subject to a final removal order by re-detaining them without complying with the federal

2    regulations. *See* Dkt. No. 6 at 10–11. Ordering Respondents not to re-detain noncitizens without

3    due process does not create a disservice to the greater public; rather, it reinforces constitutional

4    rights. *See Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It

5    is always in the public interest to prevent the violation of a party's constitutional rights."); *see*

6    *also Jorge M.F. v. Wilkinson*, No. C21-1434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)

7    ("[T]he public has a strong interest in upholding procedural protections against unlawful

8    detention, and the Ninth Circuit has recognized that the costs to the public of immigration

9    detention are staggering.") (citation modified)). Accordingly, the balance of hardships and public

10   interest weigh in Petitioner's favor.

11        **3.       Request for Pre-Deprivation Hearing Requirements**

12            Petitioner makes specific requests within his broader request for the Court to order that he

13   not be re-detained without notice and an opportunity to be heard. The Court will address each in

14   turn. First, Petitioner requests that before he is re-detained, he be given a hearing before a neutral

15   decision maker where Respondents must prove by clear and convincing evidence that he is a

16   danger or a flight risk. Dkt. No. 6 at 26. However, the Court cannot conclude that due process

17   requires a pre-detention hearing before an IJ, regardless of circumstances. *See Le*, 2026 WL

18   309239, at *6. As just discussed, there are situations in which the federal regulations do not

19   require a pre-detention hearing before an IJ. *See, e.g.*, 8 C.F.R. § 241.13(i)(3). Next, Petitioner

20   requests that Respondents not be able to re-detain him without first: (1) obtaining a valid travel

21   document; (2) providing the document to Petitioner and his counsel; (3) offering Petitioner the

22   opportunity to leave on his own within two months; and, (4) if Petitioner does not leave, only

23   then can Respondents re-detain Petitioner provided it has already "provided it has already made

24   concrete arrangements for him to be put on a flight to a third country in the reasonably

foreseeable future." Dkt. No. 6 at 26. The requested guidelines are not reflected in Section 241.13, and Petitioner cites no statutory authority that supports this request. Therefore, the Court denies this request.

## IV.    CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 6) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

    (a)    SHALL release Petitioner from detention immediately under appropriate conditions of release;

    (b)    SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

    (c)    Are PROHIBITED from re-detaining Petitioner without first complying with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231.

    (d)    Are PROHIBITED from removing Petitioner to any third country without notice and a meaningful opportunity to respond.

Dated this 12th day of March, 2026.

Tana Lin
United States District Judge